FILED

FEB 09 2022

CLERK, U.S DISTRICT COURT
NORTHERN DISTRICT OF OHIO
TOLEDO

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | **SUPERSEDING** |
| ) | **INDICTMENT** |
| Plaintiff, ) | |
| ) | 7:22-MJ-406 |
| v. ) | |
| ) | JUDGE JAMES R. KNEPP, II |
| ) | |
| JOSHUA JOHNSON, aka BIG ROK, ) | CASE NO. 3:21CR338 |
| KELVIN GIST, aka KILO, aka UNCLE, ) | Title 21, United States Code, |
| DEBORAH HASKILL, ) | Sections 841(a)(1), (b)(1)(A), |
| GUADALUPE HERRERA, aka SPEEDY, ) | (b)(1)(B), (b)(1)(C), (b)(1)(D), |
| MARCO PAVON, ) | 843(b), and 846 |
| KEVIN RUIZ, ) | |
| ) | |
| Defendants. ) | |

COUNT 1
(Conspiracy to Distribute and Possess with the Intent to Distribute Controlled Substances,
21 U.S.C. § 846)

The Grand Jury charges:

1. From in or around June 2014 to in or around November 2019, in the Northern District of Ohio, Western Division and elsewhere, Defendants JOSHUA JOHNSON, aka BIG ROK, KELVIN GIST, aka KILO, aka UNCLE, DEBORAH HASKILL, GUADALUPE HERRERA, aka SPEEDY, MARCO PAVON, and KEVIN RUIZ did knowingly and intentionally combine, conspire, confederate, and agree together and with each other, and with diverse others known and unknown to the Grand Jury, to possess with the intent to distribute and to distribute at least one kilogram of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, at least 400 grams of a mixture and substance containing a detectable amount of fentanyl, a Schedule II controlled substance, and a mixture and substance containing a detectable amount of marihuana, a Schedule I controlled substance, in



violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(A), (b)(1)(B), (b)(1)(C), and (b)(1)(D).

## MANNER AND MEANS OF THE CONSPIRACY

2. It was part of the conspiracy that:

    A. GIST obtained heroin, fentanyl, and marihuana from suppliers in Texas, Mexico, and elsewhere, including from Person 1, a person known to the Grand Jury, and transported those substances to the Toledo, Ohio area to distribute. GIST used his business, Complete Auto World on North Reynolds Road in Toledo, as a front for storing and transporting narcotics.

    B. JOHNSON obtained heroin and fentanyl from GIST, and heroin and marihuana from Person 1. JOHNSON distributed heroin, fentanyl, and marijuana in the Toledo area. JOHNSON traveled to Mexico to meet with sources of supply and to facilitate transportation of narcotics to Toledo.

    C. HERRERA worked with Person 1 to distribute and transport heroin. HERRERA utilized Speedy Transmissions, his automobile repair business in Donna, Texas, as a location to conduct drug trafficking activities.

    D. RUIZ coordinated the transfer of narcotics from Texas to recipients in Toledo, and the return of delivery vehicles back to Texas. RUIZ also transported and transferred drug proceeds from Toledo and elsewhere to sources of supply in Texas and Mexico.

    E. PAVON, a resident of Texas, transported, evaluated, and negotiated the sale of narcotics on behalf of JOHNSON.

    F. HASKILL transported heroin from Texas to Ohio on behalf of JOHNSON.

      G.     JOHNSON, GIST, HASKILL, HERRERA, PAVON, and RUIZ conducted drug trafficking activity by using telephones to make and receive telephone calls and to send and receive text or other electronic messages. To reduce the risk of being detected by law enforcement, and to conceal the identity of the person using the device, JOHNSON, GIST, HASKILL, HERRERA, PAVON, and RUIZ often used cellular telephones that had been obtained in the names of other persons or in fictitious names

      H.     When using cellular telephones or text messaging to conduct drug trafficking activity, JOHNSON, GIST, HASKILL, HERRERA, PAVON, and RUIZ used slang terms, street terminology, or code words or phrases to obscure and disguise the true nature of their activities and the true meaning of their conversations.

## ACTS IN FURTHERANCE OF THE CONSPIRACY

3.     In furtherance of the conspiracy, and to effect the objects and conceal the existence thereof, Defendants and others performed acts in the Northern District of Ohio, the Southern District of Texas, and elsewhere, including but not limited to, the following:

4.     In or around June of 2014, GIST arranged with Person 1 and other coconspirators known and unknown to the Grand Jury to ship approximately 30 pounds of marijuana concealed in freight packages to GIST in Toledo.

5.     In or around June of 2014, GIST met with Person 1 at GIST's company, Complete Auto World, and GIST provided Person 1 with a vehicle as partial payment for the marihuana shipment.

6.     In or around August of 2018, GIST arranged with Person 1 to transport "china white heroin" (a heroin / fentanyl mix) from Mexico to Toledo on consignment.

7. In or around August of 2018, JOHNSON traveled to Mexico on GIST's behalf to act as collateral and secure the consignment of china white heroin.

8. In or around August of 2018, RUIZ and Person 1 facilitated the transportation of a Cadillac SUV containing eight kilograms of china white heroin in a secret compartment by Person 2, a person known to the Grand Jury, from Mexico to Dallas, Texas.

9. In or around August of 2018, RUIZ shipped the Cadillac SUV containing eight kilograms of china white heroin on a car transporter from Dallas to Toledo, where it was received by GIST.

10. On or about August 29, 2018, RUIZ flew from Monterrey, Mexico to Toledo, where GIST picked up RUIZ.

11. On or about August 29, 2018, GIST provided RUIZ with $35,000 in cash.

12. On or about August 30, 2018, RUIZ transported narcotics proceeds to Monterrey, Mexico.

13. On or about August 31, 2018, JOHNSON crossed the border from Mexico back into the United States.

14. On or about October 11, 2018, RUIZ flew back to Toledo, where GIST drove RUIZ to JOHNSON's apartment complex and JOHNSON provided RUIZ with $44,000 in cash.

15. On or about October 13, 2018, RUIZ transported narcotics proceeds to Monterrey, Mexico.

16. On or about November 8, 2018, at approximately 2:47 p.m., RUIZ called GIST and asked, "Do you know where I'm supposed to pick up the truck tomorrow?" GIST replied, "Well I gave him the address to Manheim auction (an automobile auction house) just because I didn't have an address…but what he says he's going to do, he says he's going to call you and he

4

said he'll meet you anywhere, whatever is best for you, because he lives down there somewhere, so he said he'll meet you, but I thought he would have called you by now, since he haven't called you I'mma give you…I'm about to send you his phone number right now."

17. On or about November 8, 2018, at approximately 2:49 p.m., GIST sent RUIZ a text message containing a picture of a bill of lading for a "2011 Cadillac SRX" with the shipper information "Kelvin 819 N. Reynolds Road, Toledo, OH", the address of GIST's car dealership, Complete Auto World.

18. On or about November 8, 2018, GIST sent the Cadillac SUV from Toledo to Texas on a motor vehicle carrier.

19. On or about November 13, 2018, PAVON transported one kilogram of heroin from Texas to JOHNSON in Toledo.

20. On or about December 17, 2018, at approximately 4:18 p.m., GIST met Person 3, a person known to the Grand Jury, at a Meijer in Toledo and gave Person 3 a bag filled with $40,000 in cash as partial payment for narcotics.

21. On or about June 8, 2019, at approximately 6:20 p.m., JOHNSON participated in a phone call with Person 1, during which Person 1 stated, "Hey, I have one (1) like, like, uh…the one that, uh….Joe had …. Do you have somebody that can check it before…we send it?" JOHNSON then asked, "…Where is it?" Person 1 replied, "It's here in the Valley (referencing the Rio Grande Valley area near McAllen, Texas)." After negotiating price, Person 1 asked, "Okay. When can you send the guy to…so he can check it?" JOHNSON replied, "I'm 'bout to call him now. Call you back."

22. On or about June 10, 2019, at approximately 1:35 p.m., JOHNSON called PAVON and said, "My people down there, he's trying to give me one (one kilogram of heroin).

One of those things that you brought up here to me already…He's trying to give it to me now…he needs somebody to test it. I can't find nobody. Do you know anybody that can test it?" PAVON asked, "…down here or in Houston?" JOHNSON replied, "Yeah. No. Where you at. Right there." JOHNSON told PAVON, "Test the s--- for me, and if it's good or if it's not good…If it's good, then we…I'm 'bout to get some bands in your hands today to where you can get up here to me, and then I can give you some of the money that I owe you too. Once you get here to me. You feel me? … Let's do it." PAVON then said, "Alright then." JOHNSON then told PAVON, "I'm bout to text you this number…Just call him man and tell him you Rok (JOHNSON's) boy." PAVON said, "Alright."

23. On or about June 10, 2019, at approximately 2:11 p.m., PAVON called JOHNSON and told JOHNSON he was on his way to check the heroin.

24. On or about June 10, 2019, at approximately 2:42 p.m., JOHNSON called PAVON and PAVON asked, "Were they just supposed to let go of it, or what?" JOHNSON replied, "Yeah." PAVON said, "Alright. 'cause they didn't let go of that. They said, uh, how, however we're gonna test it, for us to test it there. But, uh…it smells, it smells different compared to the one you took last time." JOHNSON then said, "You got somebody that can go test it?" PAVON replied, "I could try to get someone to go test it. Uh…but, that s---'s like…A-1. That s---'s…d---. That gave me a kick of some of that smell, dude. You got me?"

25. On or about June 10, 2019, at approximately 2:43 p.m., JOHNSON called Person 1 and Person 1 stated, "Your boy was here…and uh, he liked it, but uh, he didn't check it. He just said it, it was, real good, it was better than, what you had before, I don't know." JOHNSON then said, "Yeah, that's what he was just telling me, I just talked to him…. Yeah 'cause…he delivered to me before, like I was telling you…He's a driver, he's a good driver…"

6

26. On or about June 10, 2019, at approximately 4:52 p.m., JOHNSON participated in a phone call with Person 1, during which Person 1 stated, "Hey...tell your guy to come get it, so he can take it." JOHNSON asked, "everything good?" Person 1 replied, "Everything good, the only thing is...uh...we already cut it in four (4) because we were going to do it on the other way." JOHNSON then asked, "So, it's already wrapped and everything?" Person 1 replied, "I'm gonna do that right now."

27. On or about June 10, 2019, at approximately 1:07 p.m., PAVON called JOHNSON and said, "Y'all got anybody near in H-town that needs some? ... we got white birds going out that way, got some f-----', those nice pigeons going out that way, white pigeons." PAVON and JOHNSON discussed money issues PAVON had with Mexican sources of supply and then said, "I was gonna say we're gonna start taking some squares up there, bro', to like H-town, that ya'll wanna come and pick, scoop them b-----s up here at the H, I mean that will be, it'll be good so that way uh...you guys can get a better price down here instead of us taking them all the way up there." JOHNSON replied, "Like what? How much? To take it?" PAVON responded, "Uh, shit I'd have to take, talk to this mother----- to see how much he, he running them through, 'cause I know we're gonna pay like twenty-four (24), twenty-five (25) a piece down here but we're gonna get straight rocks, straight solid." JOHNSON replied, "Just let me know."

28. On or about July 11, 2019, at approximately 12:51 p.m., HASKILL called JOHNSON and said, "Hey, here I come." JOHNSON responded and said, "Oh, okay. I'm over here." HASKILL then asked, "What...what road was it on, again?" and JOHNSON replied, "Austin." HASKILL then drove to JOHNSON's Austin Street residence in Toledo in a rented gray Hyundai Accent.

7

29. On or about July 13, 2019, at approximately 11:34 p.m., JOHNSON sent a text message to Person 1 from HASKILL's phone, stating, "This is rok (aka for JOHNSON) ... I'm here give me a call please."

30. On or about July 15, 2019, at approximately 9:34 a.m., JOHNSON participated in a phone call with Person 1 on HASKILL's cellular telephone, during which Person 1 said, "...I see ... at the Walmart." JOHNSON then asked, "Yeah, uh... Which one?" Person 1 replied, "On the...Uh, the one I...I saw you last time."

31. On or about July 15, 2019, at approximately 9:49 a.m., JOHNSON drove the gray Hyundai Accent rented by HASKILL to a Wal-Mart in Donna, Texas.

32. On or about July 15, 2019, at approximately 10:12 a.m., JOHNSON and Person 1 traveled from Wal-Mart to Speedy Transmissions, an auto repair shop owned by HERRERA. Inside the shop at Speedy Transmissions, HERRERA, JOHNSON, and Person 1 concealed approximately 977.3 grams of heroin inside the cabin air filter compartment of the gray Hyundai Accent.

33. On or about July 15, 2019, JOHNSON drove the Accent to HASKILL and HASKILL started driving it back to Toledo.

34. On or about July 15, 2019, JOHNSON took a Greyhound bus to George Bush Intercontinental Airport, in Houston, Texas, to board a flight to Detroit Metropolitan Wayne County Airport.

35. On or about July 15, 2019, at approximately 10:49 p.m., HASKILL texted JOHNSON, "I need gas money." JOHNSON asked HASKILL, "U gonna sleep a while until I get the money...[,] Or you're going to drive thru the night[?]" HASKILL texted JOHNSON, "Through the night."

8

36. On or about July 16, 2019, at approximately 7:32 a.m., JOHNSON sent a text message to HASKILL stating, "I need to know where u are. So my cuz can send a 100 when u wake up." HASKILL responded, "Arkansas." During the conversation JOHNSON asked, "What's your full name" and HASKILL replied, "Deborah Lynn Haskill."

37. On or about July 16, 2019, at approximately 11:30 p.m., HASKILL was stopped by the Ohio State Highway Patrol in Henry County, Ohio while driving the gray Hyundai Accent containing heroin.

38. On or about July 16, 2019, at approximately 11:48 p.m., JOHNSON texted HASKILL three times, stating, "I just landed ... I still have to go meet my guy that is buying it all...In the AM. Its 2 late to move right now at night ... But I do have 3 bands to night an I will have the other three in the morning."

39. On or about July 17, 2019, at approximately 12:19 a.m., JOHNSON participated in a phone call with Person 4, a person known to the Grand Jury, after JOHNSON's plane landed in Detroit. During the call, JOHNSON said, "...this b---- ain't answering the phone, bro'....She ain't just answerin the phone. I called her three (3) times. Hopefully you know, she's just in the house washing up and stuff, or...she fell asleep. Man, I aint gonna pay this lady today."

40. On or about July 17, 2019, at approximately 12:29 a.m., JOHNSON texted HASKILL, "Come on Debbie..Talk to me...I got everything covered."

41. On or about July 17, 2019, at approximately 12:54 a.m., HASKILL called JOHNSON and said, "Get rid of...that phone now." HASKILL then quickly hung up the phone.

42. On or about September 19, 2019, at approximately 3:26 p.m., GIST called Person 1 and Person 1 asked, "And, and uh ... with the, the other...that that uh...that don't work...what, what you do with it? ...You still have it?...Uh...you still have it there?" GIST replied,

9

"Remember, remember the...all of is not...you remember I gave, I told you that, that, that, the two (2) guys got some of it...The two (2) guys had, it...and one (1) of the guys told me, he said he'll talk to you and he'll...make it right...He said, 'I'll talk to whoever you need me to talk to, to make it right' because he said it was f---ed up but he said he know he's responsible for it..." Later, Person 1 asked, "...which ones the one we need to talk to? The one in Houston or what?" GIST replied "The one that's in, he in Pennsylvania...actually he'll be back here...he'll be back here tomorrow so I can just call you...we can talk to him together..."

43. On or about September 20, 2019, GIST met with Person 5, a resident of Pennsylvania known to the Grand Jury, at Complete Auto World.

44. On or about November 12, 2019, at approximately 5:53 p.m., GIST participated in a phone call with Person 1 and GIST explained that he had told Person 5 "to hold on to it...and we were going to see if we could get something to put with it...like me and you talked about before...that's the last conversation I had with him...I told him to put it up, cause we can wait and see if we can make it better." Person 1 then asked GIST how much people were paying "for the white one (cocaine)?" After discussing cocaine prices, Person 1 said, "So, uh, check it, check it for, for me and uh I mean, if we can do...if we can make something out of it...we'll, we'll, we'll work... and if we can't...we won't even bother." GIST then says "Right, I'll double check, I'll double check today. I'm gonna go and see a couple of people and I'll, I'll get back to you tomorrow...let you know what they say." Person 1 then said, "Okay yeah, and if you can...if you can find uh...like uh...a big hitter...I mean that can buy like...I mean we can take whatever he wants, but if you can find somebody that can buy at least uh, ten (10) or twenty (20) at a time..." and the call concluded.

All in violation of Title 21, United States Code, Section 846.

## COUNT 2
(Possession with Intent to Distribute Heroin,
21 U.S.C. § 841(a)(1) and (b)(1)(B))

The Grand Jury further charges:

45. On or about July 16, 2020, in the Northern District of Ohio, Western Division, Defendant DEBORAH HASKILL did knowingly and intentionally possess with the intent to distribute approximately 977.3 grams of a mixture and substance containing a detectable amount of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(B).

## COUNTS 3-7
(Use of a Communications Facility to Facilitate a Drug Trafficking Offense,
21 U.S.C. § 843(b))

The Grand Jury further charges:

46. The allegations of Count 1 are hereby re-alleged and incorporated herein. On or about the dates and approximate times listed below, in the Northern District of Ohio, Western Division, the Defendants listed below did knowingly and intentionally use a communication facility, to wit: a telephone, to facilitate acts constituting a felony under Title 21, United States Code, Section 846:

| Count | Defendants | Date | Approximate time |
|---|---|---|---|
| 3 | JOSHUA JOHNSON, aka BIG ROK | June 8, 2019 | 6:20 p.m. |
| 4 | JOSHUA JOHNSON, aka BIG ROK<br>MARCO PAVON | June 10, 2019 | 1:35 p.m. |
| 5 | DEBORAH HASKILL<br>JOSHUA JOHNSON, aka BIG ROK | July 11, 2019 | 12:51 p.m. |
| 6 | GUADELUPE HERRERA, aka SPEEDY<br>JOSHUA JOHNSON, aka BIG ROK | July 17, 2019 | 8:36 a.m. |
| 7 | KELVIN GIST, aka KILO, aka UNCLE | September 19, 2019 | 3:26 p.m. |

All in violation of Title 21, United States Code, Section 843(b).

### ENHANCED PENALTY UNDER TITLE 21, UNITED STATES CODE, SECTION 841(b)(1)(A) and 846
(Prior Felony Drug Offense Conviction, 21 U.S.C. § 841(b)(1)(A))

47. The allegations of Count 1 are hereby re-alleged and incorporated herein. Before Defendant KELVIN GIST, aka KILO, aka UNCLE, committed the offenses charged in this indictment, GIST had a final conviction for a serious drug felony, namely, a conviction under Title 21, United States Code, Section 846, to wit: Conspiracy to Possess with Intent to Distribute Cocaine and Marijuana, in Case No. 3:05cr732-01, in the United States District Court for the Northern District of Ohio, for which he served more than 12 months of imprisonment and for which he was released from serving any term of imprisonment related to that offense within 15 years of the commencement of the instant offense.

### FORFEITURE SPECIFICATION

48. For the purposes of alleging forfeiture pursuant to 21 U.S.C. § 853, the allegations of Counts 1 through 7 are incorporated herein by reference. As a result of the foregoing offenses, Defendants JOSHUA JOHNSON, aka BIG ROK, KELVIN GIST, aka KILO, aka UNCLE, DEBORAH HASKILL, GUADALUPE HERRERA, aka SPEEDY, MARCO PAVON, and KEVIN RUIZ shall forfeit to the United States any and all property constituting, or derived from, any proceeds they obtained, directly or indirectly, as the result of such violations, and any and all property used or intended to be used, in any manner or part, to commit or to facilitate the commission of such violations.

A TRUE BILL.

Original document - Signatures on file with the Clerk of Courts, pursuant to the E-Government Act of 2002.